Thank you. May it please the court. Gabriel Verdugo on behalf of the appellants. Per the court's order I'm addressing the business income for interruption of practice endorsement which is in the policies for Hong, DDS and Owens-Davies and I'll also address the extra contractual claims that Owens- Davies alleges. Turning first to the interruption of practice endorsement this is an endorsement that adds coverage to the two policies. It's available at the excerpts of records page 143. We provided copies for the court as well as opposing counsel and these are examples from the Hong policy. I also included a copy of the business income and extra expense endorsement for easy review. Contrary to the district court's decision this endorsement expressly states, quote, the following coverage is added to your business owner's special property coverage form, end quote. This added coverage constitutes an affirmative grant of coverage and the policy. It, quote, changes the policy, end quote, and modifies insurance provided, end quote, under provisions that include the business income and extra expense provision. Under Washington law the effect of this endorsement is clear. It becomes part of the insurance contract and that's even if it means that there's a new and different contract created. The Washington Supreme Court said this in the transcontinental insurance company versus Washington Public Utilities case which is at 760p second 337. The question here is how does this endorsement fit within the policy and specifically how does it modify the business income and extra expense endorsement? The answer is that it adds new coverage language to the business income and extra expense endorsement. As discussed in this briefing and the case as well as during the oral argument by my colleague Mr. Gould, the business income and extra export expense endorsement, which is at ER 140, it states at paragraph 1b, quote, we will pay for the actual loss of business income you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by direct physical loss of or damage to property at the described premises, end quote. It's important to note that in contrast the interruption of practice endorsement does not contain the phrase direct physical loss of or damage to property or have any version of it in the endorsement. A reasonable interpretation of what that endorsement means then is that it doesn't include the requirement. Instead the key terms of the endorsement are suspension and operations. A suspension is either the partial or complete cessation of your business activities or circumstances under which a part or all of the... I am losing the thread here. Oh under the first endorsement, right? Your Honor, so I'm quoting different sections, so I didn't print out the definitions from the policy. It would be helpful to say each time which subsection you're quoting. So I'm quoting definitions from another section of the policy, but these terms are ones that are used at ER 140. These definitions though are available in the policy in the excerpt of record at page 139. So at that page 139 it states that a suspension is either the partial or complete cessation of your business activities or circumstances under which a part or all of the described premises is rendered untenable, end quote. And then operations which are at 138 of the excerpts of record are defined as the type of business activities occurring at the described premises and tenet ability of the described premises. And for the reasons addressed in our briefing both Owens-Davies and Hong DDS have alleged that they suffered a suspension of their operations. Although, so we haven't been able to find case law... I understand that has to do with your basic claim which was that the business income for interruption of practice provision supersedes the physical loss or damage. That's your basic argument, right? Correct, that this endorsement modified the coverage language and provided new except as otherwise stated in this endorsement the terms and conditions of the policy applied to the insurance stated below. Correct, Your Honor, and that's what the district court relied on in determining that this did not change the requirement for direct physical loss of or damage to property. But the court, the district court at most should have found that this established ambiguity between the endorsement and the coverage language and business income and extra expense. And the reason for that is, one of the reasons is that the endorsement specifically states that it adds coverage, added coverage to the policy. And a reasonable interpretation of what that means is that by changing the coverage... Well it does because it's changing the way that you measure loss of business income, but loss of business income seems to be covered by the other endorsement and this seems to be an addendum to that endorsement. And Your Honor, under broader language, that is what controls. Right, and so now you have different ways of measuring the actual loss of business income. Your Honor, that's the insurance company's interpretation of this language, but the question before the court isn't whether the insurance company has an interpretation of the endorsement, it's... But, so tell me what language you're relying on as providing that you have... Loss of business income is capitalized, which usually seems to mean something that's either defined or at least used elsewhere in the policy, right? So Your Honor, the language in the endorsement, which is at page 143, states that the following... The insurance applies only... Excuse me. Oh, the following coverage is added to your business owner's special property coverage form. The following changes are made to the coverages of business income and extra expense. And then it states just below that, so this is just under the paragraph 1, for loss of business income at each scheduled location affected by the suspension of your operations, we will pay. And Your Honor, this is... This insurance applies only when business income coverage is included within the policy. The business income coverage is this other endorsement, right? Correct. All right. So your supposition is that even though this only applies if this is already in there, it completely eliminates the... It's a restatement of this. It's not just an addition to that. That it replaces the coverage agreement. That instead of the terms, and I'm turning to ER 140... Not the coverage. You're saying it replaces the business income and extra expense endorsement. The provision regarding suspension. So if you look to paragraph 1B in 140, which is the business income and extra expense provision, that's where this statement regarding direct physical loss of or damage to property is included. It states, the suspension must be caused by direct physical loss of or damage to property at the described premises. But the business interruption, excuse me, interruption of practice endorsement, which expressly modifies this business income and extra expense provision, does not include that limiting phrase. Should we think of it as a modification or replacement? Replacement of the coverage agreement. That provision. You would have us plug it in. Correct. And the endorsement, the interruption of practice endorsement, expressly states that it adds coverage. If a layman is interpreting what an endorsement means when it adds coverage, it would imply that it expressly adds additional coverage to the form, not just that it changes the payment of benefits. So you think there's at least an ambiguity? At least an ambiguity. And your honor, the do when there's an ambiguity? And the answer is, that endorsements generally control over inconsistent terms or conditions in a policy. Quote, if there is ambiguity arising because of the difference of language used in the endorsement and the body of the policy, or between two endorsements, the language of the contract is construed most strongly against the insurer. It uses the term period of restoration. What would that mean if there were no physical damage requirement? Your honor, this provision includes two separate parts. So there is a separate method of calculating. And under paragraph 1A, this is in ER 143, the daily limit shown in the declarations without reduction for discontinuing expenses or rescheduled clients, but only for the initial 30 days of loss or a portion of a day for each occurrence. That phrase, at the very least, does not, does not use a period of restoration. The most this would get you would be 30 days. Well, your honor, I think this creates an ambiguity. The insurance company certainly could have. I'm sorry, I don't know what that means, but let's suppose you were right. The most it would get you would be 30 days. No, your ambiguity as to the entire replacement of the coverage of language. And I think but if you replace it, you would still only get 30 days because that's what it says here. Well, under paragraph 1B, it would apply for longer. Under paragraph 1B, you have to have a period of restoration. Your honor, I think that that's pointing to a potential ambiguity in this endorsement because the insurance company easily could have said a suspension must be due to direct physical loss of or damage to property. I mean, I think it's fairly obvious they didn't think they needed to because they were using the term loss of business income, which is in the earlier endorsement, and they were just telling you how to calculate. Your honor, I think that there there are multiple possible interpretations of this, but in the Washington Supreme Court's guidance is that it must be interpreted in favor of coverage. And your honor, unless there are further questions on this, I'd like to briefly address the extra contractual. That'd be very brief. Your honor, Owens-Davies has elected extra contractual claims. They are sufficiently alleged in the Supreme Court law for there to be coverage in order for a claimant to assert extra contractual claims. That's in the Coventry Associates versus American State case, which is cited in our briefs. What's your strongest claim? Our strongest claim is, well, your honor, they're related, but insurance bad-faith for failure to properly investigate. Exactly. And that supports CPA claims, that supports negligence as well. So those would be our three. What is the investigation that needed to be done? And I guess maybe I need to back up and ask a preliminary question. Are, as part of the cases where you're raising those issues, are you asserting that the virus was present and that's what needed to be investigated? No, your honor, we're not asserting the presence of the virus, but there are additional investigations that the insurance company... Like what? I can't think of one. I only came up with the one Judge Forrest came up with. Well, your honor, this would potentially include a site visit, obtaining statements from the firm regarding the impact of the the the orders on its business, as well as, you know, requesting business records to review loss of income. Those are all... If you'd find coverage and you're on the back end, but if they're they're making a decision looking at the contract that the claimed loss isn't covered, what additional investigation would be needed other than the one that Judge Forrest just identified, about whether the virus is physically present? Under Coventry, your honor, there doesn't have to be coverage in order for a duty to investigate to arise. Well, I know, but there has to be an investigation that could be possible or relevant. What would they do? Even just hypothetically, we can't, I can't think of one. Your honor, I think that, you know, they should have investigated and they could have investigated what the effects of this loss were in any efforts that could have been used to mitigate the insurer's loss. I think that these are all viable options. But in their view, there was no coverage. That was their first decision. It doesn't matter whether there was mitigation. It doesn't matter how much loss you have. We look at this policy and we say there was no coverage. But aside from... Well, go ahead. Your honor, I think that just gets back to Coventry, which there is a duty to Well, there may be, and the other problem is that none of these examples are in your complaint. You don't allege anything particular they should have done. Well, your honor, one of the issues that with the court's decision, the lower court's decision, is that it decided, is that it implies that there must be a detailed factual allegations of what steps the insurance company should have done. Especially when it's very hard to think of them. It's not facially plausible. Maybe you could fill it out, but none of us can actually think of what they should have done. If you can think of it, maybe you should have put it in the complaint. Well, your honor, these are examples that we provided, but I think that I would urge the court not to adopt a rule that... What is the example again? What should they have done? Examples were obtaining statements from the firm regarding the impact. But the impact doesn't matter if there's no coverage. Well, that's all part of investigating coverage and that's part of investigating the claimed loss. Counselor, you're way over time. I am. Thank you, your honor. We would ask the court to, excuse me, to rule that there is coverage to reverse the trial court's decision. Thank you very much. Thank you. Good morning and may it please the court. I'm Chris Boning from Paul Weiss Riffkin Wharton Garrison in New York City. I'm here today on behalf of Valley Forge Insurance Company, Transportation Insurance Company, and National Fire Insurance Company of Hartford, each of which is an affiliate of CNA. I'm going to address, consistent with the court's July 11th order, the two topics that Mr. Verdugo covered, the business income for interruption of practice endorsement and the extra contractual claims. District Court correctly denied these claims and that decision should be affirmed on appeal. With respect to the business income for interruption of practice endorsement, there are three important elements that Mr. Verdugo did not mention in his presentation today. The first is that the claim was not brought in the underlying complaints. There's no mention of this coverage in the Hong complaint and it's not mentioned in Owens-Davies except to specify it as an alternative method for coverage. Second, it was raised in this form for the first time in the briefing below. And third, it was seemingly abandoned on appeal because they made no mention of it in their reply papers before the court. But as the questions from the panel... They made no mention of what? No mention of the coverage under the business income for interruption of practice endorsement in their reply before this court. What's the claim fares no better? As the court has suggested from its questions, it's really an alternative method of calculating business income loss when you otherwise satisfy. Now that I'm looking at it, there's a one and then there's a two. Business income extension for drinkable water, right? And it's interesting because the drinkable water is resulting from your inability to obtain drinkable water as determined by a public health authority. So the structure of that is sort of similar to what we have here. You have a public health authority essentially saying don't drink the water. Now, and there's definitely coverage for that in here. So would your position be but it doesn't matter because there's no coverage for that? Could you nonetheless conclude that there's no coverage for it and therefore this doesn't create coverage for it? It certainly seems to create coverage for an inability to obtain drinking water determined by a public authority, not only a way to measure it. That's correct because in distinction from the business income for interruption of practice endorsement that Owens, Davies, and Hong seek to rely on, which says the endorsement modifies insurance, the drinkable water provision talks about the following coverage being added. But the best place to go for the plain natural reading... The following coverage added to your business owner's special property coverage form. Right. I think the best place, your honor, to go for the plain natural reading of the endorsement is to the reading that Owens, Davies itself gave to the endorsement when it was pleading its case. In paragraph 49 of the Owens, Davies complaint, it says defendants business income for interruption of practice endorsement provides for two alternative methods of coverage of recovery under the business income extra expense and civil authority coverages. Critically, Owens, Davies in that same paragraph goes on to say under the first alternative at plaintiff's option, defendant national fire insurance is contractually obligated to pay for plaintiff's covered loss resulting from the covered cause of loss, the daily limit shown in the declarations. And in their prayer for relief, which is at the record, the record excerpts at 212, they say that they're entitled to this coverage if they establish physical loss of covered property. The reading that they're urging now entirely eliminates the trigger of coverage in what is a property policy that requires a covered cause of loss or physical loss of or damage to property. And the Washington Supreme Court in Vision 1 indicated as much, saying that property insurance policies do not cover economic losses. They are only triggered when there is physical loss of or damage to property. So we submit that their own pleading... And that's why the second extension is interesting. The one business income extension for drinkable water, it seems not to be true about that. I read it as saying if the Public Health Authority, I mean if this is whatever that city was in Wisconsin that had undrinkable water and they tell you not to drink water, there's water and there's no damage to your property, but nonetheless there's definitely coverage. In contrast to the provision they're claiming under, which also provides that you can have coverage for the first 30 days and then beyond that we have to look at the period of restoration and the definition of period of restoration in the in the contract begins on the date of the physical loss or damage to covered property and ends when that property should be repaired, rebuilt, or replaced. Which again indicates that this is just another way of calculating business income loss when you otherwise fall within the scope of coverage under the property insurance policy. On the extra contractual claims, the court below concluded that those claims should be dismissed because they were based on nothing more than the assertion that the denial of coverage was unreasonable, that the investigation was insufficient, or by simply reciting the provisions or the elements of a cause of action. Here, as has been noted by Mr. Goldman and Mr. O'Connor, the denial of coverage is consistent with a great overwhelming majority of decisions around the country, including decisions from this court, from nine circuit courts of appeal, applying at least the law of 19 different states and from the highest court. You're not suggesting that would be sufficient. They need to look at these policies and the claims made in these cases. But my problem, I think it sounds like Judge Forrest has the same problem, what investigation would they do apart from looking at the claim presented here? That's exactly right. Unless it was an allegation somewhere of the virus being physically present. Which there isn't. So as Judge Rothstein concluded below, there's nothing alleged. There's no plausible allegation of what additional investigation should have been undertaken by my client. And Judge Saylor in the District of Massachusetts in the Kamakura case came to the same conclusion. As a technical matter, it does seem that the district court didn't say a whole lot about futility when it comes to a case law that says that district courts have an obligation. I'm assuming that your position is we shouldn't remand for them to do what would be maybe a futile exercise themselves. That's exactly right. They, even in the questioning before this panel today, could not offer further facts that potentially could be alleged to suggest that the investigation was insufficient. All of the facts that they they discuss are facts that would go to quantifying the loss. But the question here is, does their allegation that the closure orders themselves creates physical loss of damage, which gives rise to coverage, that doesn't need to be investigated by visiting the site or reviewing the counting records. These two issues are not in the Washington Supreme Court case, right? That's correct. Is there any reason we shouldn't just decide this case? Because one is a coverage, an alternative coverage argument, and the other are alternative claims. Well, this case also, in these cases, they also bring the general business interruption. Well, that's true. And also, I guess the the non-contractual claims do depend on the outcome of the contractual claims. Correct. Some degree. Maybe not very much, but a little bit. So, unless unless there are any further questions from the panel, I would ask that the decision below be affirmed in all respects. Thank you. Stacey, is there time left on the clock? We'll give you one minute. Got to catch you off guard now, I'm sorry. What else should we know? One other point, Your Honor. I was thinking more about what investigation should have occurred here, and I believe these two issues for Owens-Davies are related. So, if there, you know, we've presented a reason why there's an alternative coverage argument in this case, and to the extent that the endorsement, that is something that's highly relevant to the extra contractual claims. Now you're using the word investigate, I think, to mean, you know, sort of separately consider. Separately. But that's separately considering a legal claim, a contract language, isn't it? It would include considering that that contract language and seeing whether there's coverage here. So, investigating coverage in general. But that's not your complaint. I'm sorry? You don't even mention this provision in your complaint, do you? Under Owens-Davies, I mentioned in our complaint. But wouldn't that, I mean, if your argument is the investigation is to figure out whether there's coverage, and we figure out whether there's coverage based on figuring out what the language says, that's really the other claim that you're making, which is reasonable denial or bad faith denial. Well, I think there is a relation. So, Your Honor, one of you asked regarding, you know, what is our strongest extra contractual claim? If, because an example where there needs to be an unreasonable denial of coverage or denial of benefits. So, if there is coverage under this alternative coverage argument, that is, it would be relevant. You know, regardless. Well, if there is coverage under anything, then the extra contractual claims may look different. But they turn on the coverage. Those, those ones do, yes. But, Your Honor, there's also a duty to investigate whether there would be coverage. I understand that, but what Judge Forrest is saying, as I understand it, is that whether it's this coverage question or a different coverage question, it's still a coverage question. It is still a coverage question, that's correct. And not an investigation question. Well, investigating whether coverage exists. In light of the policy terms. Well, how do you investigate? You look at a piece of paper and you say, okay. That's the investigation? And, and to the extent of whether the insurance company considered whether there would be coverage under this endorsement, that would also be relevant. Thank you for your argument. Thank you all for your arguments. We'll take this case under advisement and stand in recess.
judges: BERZON, CHRISTEN, FORREST